UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

ERICA SCIARRONE,

                      Plaintiff,

– versus –

BRIAN C. JULIANO and OLDE GRANDAD INDUS. INC.,

                      Defendants.

MEMORANDUM AND ORDER

13-CV-5985 (JG) (RER)

APPEARANCES:

    LAW OFFICE OF OREN J. COHEN
        1162 Victory Boulevard
        Staten Island, NY 10301
    By:    Oren J. Cohen, Esq.
        *Attorneys for Plaintiff*

    DOWNING & PECK P.C.
        17 Battery Place, Suite 709
        New York, NY 10004
    By:    John M. Downing, Jr., Esq.
        *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        Plaintiff Erica Sciarrone brings this diversity action against defendants Brian C. Juliano and Olde Grandad Industries Inc., alleging that their negligence caused her to be injured in an automobile accident in Staten Island on December 22, 2011. Defendants now move for summary judgment on grounds that Ms. Sciarrone is barred from recovery because she has not made a prima facie case of "serious injury" as required by New York Insurance Law § 5102(d). Plaintiff, in turn, cross-moves for summary judgment on the issue of Defendants' liability.

BACKGROUND

The following undisputed facts are based upon the parties' Local Civil Rule 56.1 statements and supporting materials. Any disputed facts are noted and have been viewed in the light most favorable to the plaintiff. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). On December 22, 2011, Ms. Sciarrone, who was driving her car, was stopped at a red light near the intersection of Arthur Kill Road and Drumgoogle Road, in Staten Island, New York. Defendant Brian C. Juliano, an employee of Defendant Olde Grandad Industries Inc., was driving a truck that rear-ended Ms. Sciarrone's stopped car. Though only Ms. Sciarrone's hands made contact with the interior of the car upon impact, Ms. Sciarrone asserts, and Defendants dispute, that she immediately experienced a headache and nausea, as well as pain in her neck, arm and back.

When the police arrived at the scene of the accident, Ms. Sciarrone declined the offer of an ambulance. She drove to her house to drop off her damaged car, and then her husband drove her to the emergency room at the Staten Island University Hospital. Sciarrone Dep. 32:11-33:17.[1] The examining physician at the hospital diagnosed Ms. Sciarrone with a concussion but gave her no treatment and took no x-rays or MRIs. Ms. Sciarrone walked out of the hospital on her own power approximately one hour later. Sciarrone Dep. 33:18-35:7. About one month later, Ms. Sciarrone began receiving treatment from various doctors for injuries that she maintains were the result of the accident.

In January 2013, thirteen months after the accident, and two months after the complaint in this case was filed, Ms. Sciarrone fell while walking on the stairs at her home and sustained a fracture to her ankle. Ms. Sciarrone contends that she fell because she was dizzy, and

---

[1] Ms. Sciarrone's deposition is attached as Exhibit B to the Affirmation of John M. Downing, ECF No. 24-2.

that this dizziness was a result of the injuries she suffered in the automobile accident thirteen months prior.

Ms. Sciarrone originally brought this case in the New York State Supreme Court for Richmond County on November 1, 2012. Pursuant to 28 U.S.C. § 1446(b) and 28 U.S.C. § 1332, the Defendants removed the case to this court on October 29, 2013. These motions followed.

DISCUSSION

A. *Defendants' Motion for Summary Judgment*

1. *The No-Fault Framework*

Under Rule 56 of the Federal Rules of Civil Procedure, the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing the case will determine those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* Moreover, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Once the moving party has met its burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (1986)).

Under New York law, a claimant cannot bring suit for a personal injury arising out of an automobile accident "except in the case of a serious injury." N.Y. Ins. Law § 5104(a). To qualify as a "serious injury," the claimed injury must fall into one of nine statutorily-defined categories:

> [D]eath; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss or use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

According to the New York Court of Appeals, the purpose behind this legislative limitation on personal injury claims is to "'significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault [insurance] premium.'" *Licari v. Elliott*, 455 N.Y.S.2d 570, 573 (1982) (quoting Memorandum of State Executive Dept., 1977 McKinney's Session Laws of N.Y., p. 2448). Implied in the statutory definition of "serious injury" is that "any injury not falling within [its parameters] is minor" and thus inappropriate for trial by jury. *Licari*, 455 N.Y.S.2d at 572. However, New York law still compensates those with less than serious injuries. Without regard to fault, it provides for medical expenses, lost wages, and other benefits. *See* N.Y. Ins. Law §§ 5102(a) & 5103.[2]

---

[2] The New York Court of Appeals has described the design of the No-Fault statutory scheme as follows: "Every car owner must carry automobile insurance, which will compensate injured parties for 'basic economic loss' occasioned by the use or operation of that vehicle in New York State, irrespective of fault. Only in

To give effect to the policies underlying this statutory framework, a court must make a threshold determination of whether a jury could find that a plaintiff suffered a "serious injury," or whether as a matter of law the injury suffered is of a type that "should be excluded from judicial remedy." *Licari*, 455 N.Y.S.2d at 574. To make such a determination on summary judgment, New York employs a burden-shifting scheme under which:

> a defendant must [first] establish a prima facie case that plaintiff did not sustain a "serious injury" within the meaning of Insurance Law § 5102(d). In support of its argument that there is no such serious injury, defendant may rely on the unsworn reports by plaintiff's physicians, but must provide evidence from its own physicians in the form of sworn affidavits. Once a defendant's burden is met, the plaintiff is then required to establish a prima facie case that he sustained a serious injury. For plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians.

*Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010) (quoting *Barth v. Harris*, 00-civ-1658, 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001) (citations omitted)).

Plaintiff must present objective proof, as subjective complaints of pain will not, standing alone, support a claim for serious injury. *Id.* In other words, the plaintiff is obligated to oppose the motion with "competent medical evidence based upon objective medical findings and diagnostic tests [that] support her claims." *Fountain v. Sullivan*, 690 N.Y.S.2d 341, 342 (3d Dept. 1999).

2. *The Defendants' Prima Facie Case*

In support of their motion for summary judgment, the Defendants point to several sources of evidence that, they claim, establish a prima facie case that Ms. Sciarrone has not suffered a "serious injury." First, they attach affidavits of a neurologist, Dr. Jerome Block, who examined Ms. Sciarrone on January 28, 2014 at Defendants' request, and, in a separate report,

---

the event of 'serious injury' as defined in the statute, can a person initiate suit against the car owner or driver for damages caused by the accident. [The] No-Fault [Law] thus provides a compromise: prompt payment for basic economic loss to injured persons regardless of fault, in exchange for a limitation on litigation to cases involving serious injury." *Pommells v. Perez*, 4 N.Y.3d 566, 571 (2005) (citations omitted).

analyzed MRI reports of Ms. Sciarrone written by other physicians. *See* Affirmation of John M. Downing ("Downing Aff."), Exs. N & O, ECF No. 24. After his physical examination of Ms. Sciarrone, Dr. Block concluded that her neurological results were completely normal, and that any injury to her spine was degenerative and age-related in nature and preexisted the December 2011 accident. Downing Aff., Ex. N, at 11-12. In addition, Dr. Block reviewed MRI reports from both before and after the December 2011 accident. He concluded that the white matter lesion on Ms. Sciarrone's brain, which Ms. Sciarrone's doctors had observed in a post-accident MRI, was in fact noted in a 2010 MRI report. Downing Aff., Ex. O.

Defendants also rely on the medical reports of Ms. Sciarrone's primary care physician, Dr. Joseph P. Santiamo, showing that Ms. Sciarrone was treated for migraine headaches and disorientation less than two years prior to the accident, Downing Aff., Ex. M, at 11;[3] the Staten Island University Hospital records from the day of the accident, which indicate no major injury apart from a concussion, Downing Aff., Ex. I; and Ms. Sciarrone's deposition testimony regarding the severity of the collision and her actions following the accident.

This evidence, considered as a whole, establishes a prima facie case that plaintiff's injuries are not "serious" within the meaning of New York's Insurance Law.

B. *Ms. Sciarrone's Effort to Establish a Prima Facie Case of "Serious Injury"*

The burden therefore shifts to the plaintiff to introduce objective medical evidence to support her claim that her injuries are serious. Under Section 5102(d) of the New York Insurance Law, Ms. Sciarrone claims that the December 2011 collision (i) caused a significant limitation of use of a body function or system; (ii) resulted in a permanent consequential limitation of use of a body organ or member; (iii) prevented her from performing

---

[3] As mentioned above, to meet its initial burden that the plaintiff did not suffer "serious injury," the defendant may rely on unsworn reports of the plaintiff's treating physician. *See Cody v. Parker*, 693 N.Y.S.2d 769, 770 (3d Dept. 1999).

her material, customary and usual acts for over ninety (90) days of the first 180 days after the accident; and (iv) precipitated a fracture to her ankle.[4]  For reasons set forth below, Ms. Sciarrone fails to sustain her burden that she suffered any one of these four types of serious injury as a result of the car crash.

    1.    *Significant Limitation of Use of a Body Function or System, or a Permanent Consequential Limitation of Use of a Body Organ or Member*

Section 5102(d) states that "serious injury" occurs, *inter alia*, when there is a "significant limitation of use of a body function or system," or a "permanent consequential limitation of use of a body organ or member."  N.Y. Ins. Law § 5102(d).  With respect to these categories of injury, Ms. Sciarrone alleges that she suffered impact-induced injuries to her head, back, neck and shoulders.  Downing Aff., Ex. H, ¶ 12-13.  Ms. Sciarrone further argues that these impairments constitute significant or permanent consequential limitations, and are thus serious injuries for which she can seek recovery.  *See* Memorandum of Law in Support of Plaintiff's Cross-Motion and in Opposition to Defendant's Motion, ECF No. 28-26, at 2-15.

    a.    *Ms. Sciarrone's Alleged Head Injuries*

To support her claim, Ms. Sciarrone submitted an affidavit and sworn report from Dr. Narayan Paruchuri concerning an MRI of her brain taken in April 2012, five months after the accident, which revealed a "white matter lesion."  Affirmation of Orin J. Cohen ("Cohen Aff."), Exs. 9-10, ECF No. 28.  Ms. Sciarrone contends that this occurred as a direct result of the December 2011 car accident, and as such, provides objective medical evidence of a serious injury to her brain.

---

[4] Ms. Sciarrone's Memorandum of Law in Support of Plaintiff's Cross-Motion and in Opposition to Defendants' Motion, ECF No. 28-26, makes clear that these are the four grounds upon which she is asserting that her injuries are serious.  No specific categories are expressly set forth in Ms. Sciarrone's Bill of Particulars, but the underlying injuries are alleged.  Downing Aff., Ex. H, ¶ 12-13.

However, the Defendants submitted evidence that Ms. Sciarrone was diagnosed with a white matter lesion over one year prior to the accident. Downing Aff., Ex. M, at 31-32. In November 2010, Ms. Sciarrone's personal doctor ordered an MRI of her brain when she complained of headaches. *Id.* The reports of this test note a "single punctate focus of signal abnormality at the left frontal lobe subcortical white matter," which was characterized as a "nonspecific radiologic finding." *Id.* Defendants' physician, Dr. Block, compared this November 2010 MRI report of Ms. Sciarrone with the April 2012 MRI taken after the automobile accident. He concluded that the abnormality detected in the April 2012 MRI was "highly likely to be the same nonspecific lesion" as the one that was found in November 2010. Downing Aff., Ex. O.

Even where there is objective proof of a plaintiff's injury, such as an MRI scan, a preexisting condition can interrupt the chain of causation between the accident and the claimed injury. *See Pommels v. Perez*, 4 N.Y.3d 566, 572 (2005). In their affidavits and sworn reports, Ms. Sciarrone's experts failed to adequately address whether the white matter lesion in the April 2012 MRI existed prior to the car crash. Their submitted proof was thus insufficient to create a material issue of fact regarding Ms. Sciarrone's alleged head injury. *See Franchini v. Palmieri*, 1 N.Y.3d 536, 537 (2003).

Ms. Sciarrone also puts forth evidence, undisputed by the Defendants, that she was diagnosed with a concussion on the day of the accident at Staten Island University Hospital. Downing Aff., Ex. I. She also presents affirmations from a neurologist and neuropsychologist that she suffers from post-concussive syndrome as a result of the collision. Cohen Aff., Exs. 1 & 5. However, a neurologist's sworn diagnosis of post-concussive syndrome, based on plaintiff's subjective complaints and unaccompanied by objective findings, does not provide the requisite

proof of serious injury. *Fitzmaurice v. Chase*, 732 N.Y.S.2d 690, 692 (3d Dept. 2001); *Alcombrack v. Swarts*, 856 N.Y.S.2d 357, 359 (4th Dept. 2008). Ms. Sciarrone argues that the impact of the crash produced chronic headaches, dizziness and loss of concentration. But the records of her primary physician cast doubt on these claims. These records show that Ms. Sciarrone was treated repeatedly for migraines and disorientation prior to the collision. Downing Aff., Ex. M at 11. As with the white matter lesion, Ms. Sciarrone's submissions fail to adequately show that her symptoms were causally related to the automobile accident.[5]

Even assuming, *arguendo*, that her dizziness and headaches were due to the accident, subjective complaints of pain are insufficient on their own to show serious injury under New York law. *Munoz v. Hollingsworth*, 795 N.Y.S.2d 20, 21 (1st Dept. 2005).[6]

b. *Ms. Sciarrone's Alleged Back Injuries*

Ms. Sciarrone also presented evidence that she suffered a spinal herniation as a result of the accident. A February 2012 MRI report, and an accompanying physician's affidavit, establish a disc protrusion in Ms. Sciarrone's thoracic spine at the T7-8 vertibrae. Cohen Aff., Exs. 11-12. However, Ms. Scarrione indicated at her deposition that her lower and middle back pain had all but completely subsided. Sciarrone Dep. at 49:23-50:25. Dr. Block's report likewise found that Ms. Sciarrone's middle back pain had "diminished remarkably and [was] no longer a significant problem." Downing Aff., Ex. N, at 12. Thus, it is unclear what impact, if any, the herniated disc is producing on Ms. Sciarrone. It is well settled that the mere existence of a herniated or bulging disc does not prove serious injury without further objective medical evidence of the extent of the alleged physical limitations and their duration. *See Noble v.*

---

[5] For this same reason, I find the affidavit of the neuropsychologist, Dr. Rimma Danov, carries little weight. It does not address Ms. Sciarrone's prior treatment for dizziness and migraines, and appears to be largely based on Ms. Sciarrone's subjective complaints. Cohen Aff., Ex. 5.

[6] Moreover, Ms. Sciarrone testified in her deposition that her headaches had become less frequent since the accident. Sciarrone Dep. at 47:6-17.

*Ackerman*, 675 N.Y.S.2d 86, 89 (1st Dept. 1998) ("[T]he existence of a herniated disc does not per se constitute serious injury."); *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 353 n. 4 (2002).

Moreover, the February 2012 MRI report found degenerative changes in the area of Ms. Sciarrone's herniated disc. Cohen Aff., Ex. 12. Defendants' neurologist, Dr. Block, opined that these changes preexisted the accident. Downing Aff., Ex. N, at 12. The affidavits of Dr. Lipshutz and Dr. DeMartinis do not adequately explain why preexisting conditions were ruled out as a cause of Ms. Sciarrone's alleged limitations in her spine. *See Kamara v. Ajlan*, 968 N.Y.S.2d 45, 46-47 (1st Dept. 2013).

   c. *Ms. Sciarrone's Alleged Neck and Shoulder Injuries*

In addition to her head and back, Ms. Sciarrone asserted that she suffered serious injuries to her neck that resulted in, among other things, a decrease in the range of motion of her cervical spine, along with associated neck pain and headaches. According to Dr. Lifshutz's affidavit, he treated Ms. Sciarrone in June 2014, and he recorded cervical ranges of motion as "left rotation 70 out of 80 right lateral flexion 35 out of 45 degrees and extension 50 out of 60 degrees." Cohen Aff., Ex. 1, ¶ 21. He recorded the measurements on a hand-held goniometer, and based the normal ranges of motion on those established by the American Medical Association. *Id.* ¶ 5.

Although courts have found that objectively measured diminutions in a plaintiff's range of motion support a claim of serious injury, *see, e.g.*, *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350 (2002), these particular measurements fail to raise a genuine issue requiring trial. First, Ms. Sciarrone was examined at the Staten Island University Hospital mere hours after the accident occurred. Although the examining physician mentioned a possible muscle

spasm in the neck in his report, he also wrote that Ms. Sciarrone's neck was "supple," with "no midline tenderness," and did not diagnose any injury to the neck or shoulder. Downing Aff., Ex. I.[7] Ms. Sciarrone's own doctor, Dr. Lifshutz, ordered an MRI of the cervical spine in January 2012 after the accident that indicated only "mild degenerative disc change" in the mid-cervical levels with no evidence of disc protrusion, spinal or foraminal compromise. Downing Aff., Ex. J. When Dr. Block examined Ms. Sciarrone two years later, he affirmed that she had a full range of motion in the cervical region albeit with a "sense of tightness." Downing Aff., Ex. N., at 5, 11. None of Ms. Sciarrone's evidence successfully accounts for the conflicting Staten Island University Hospital records, the January 2012 MRI showing only mild degenerative changes, and Dr. Block's report stating that Ms. Sciarrone currently possesses full range of motion in her neck. *See Komina v. Gil*, 968 N.Y.S.2d 457, 458-59 (1st Dept. 2013) (finding no serious injury where plaintiff's chiropractor made no attempt to reconcile his findings of limited range of motion with MRI reports showing normal spine images). Although Ms. Sciarrone affirms that she still experiences pain in her neck, New York courts have been clear that subjective complaints about pain are not enough to defeat summary judgment. *See Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350 (2002); *Shaw v. Looking Glass Assoc.*, 779 N.Y.S.2d 7, 10 (1st Dept. 2004).

    2.    *Prevention from Performing Substantially All Normal Activities for 90 out of the 180 Days Immediately Following the Accident*

Ms. Sciarrone also alleges that she meets the threshold of serious injury because her injuries prevented her from "performing substantially all of the material acts which constitute [her] usual and customary daily activities for not less than ninety days during the one hundred

---

[7] The Staten Island University Hospital records regarding the examination of Ms. Sciarrone's neck state, "NECK: Supple; no midline tenderness; (+) bilateral paraspinal muscle spasm; no cervical lymphadenopathy. No JVD." Downing Aff., Ex. I, at 8.

eighty days immediately following the occurrence of the injury or impairment." N.Y. Ins. Law § 5102(d). The words "substantially all" mean that "the person has been curtailed from performing [her] usual activities to a great extent rather than some slight curtailment." *Licari*, 57 N.Y.2d at 236. To prove her case, the plaintiff is required to show that the curtailment of activity was supported by objective medical evidence. *Blake v. Portexit Corp.*, 893 N.Y.S.2d 28, 30 (1st Dept. 2010) (plaintiff's affidavit affirming that he could not play sports with his children, and had difficulty walking, going up stairs, and getting into cars, did not raise a triable issue of fact because it was unsupported by medical evidence); *Rennell v. Horan*, 639 N.Y.S.2d 171, 172 (3d Dept. 1996) (no serious injury under 90/180 day statutory provision where record failed to show that curtailment was "medically indicated"). Affirmations of medical professionals based solely on a plaintiff's subjective complaints are similarly lacking in probative value. *See Boyd v. Pierce*, 638 N.Y.S.2d 808, 809 (3d Dept. 1996) ("The opinions of plaintiff's doctors . . . lack probative force as they are based solely upon plaintiff's summarized and subjective history of headaches and dizziness.").

Ms. Sciarrone submitted affidavits and medical reports from four doctors who examined her at various times after the accident: Dr. David Lifshutz, a neurologist; Dr. Michael DeMartinis, a chiropractor; Dr. Rimma Danov, a neuropsychologist; and Dr. John Reilly, an orthopedist.[8] Cohen Aff., Exs. 1-8. None of these documents indicate that any doctor told Ms. Sciarrone to curtail her daily activities in a significant way during the 180 days following the accident. She was never confined to her bed, *see* Downing Aff., Ex. H, and her deposition testimony indicates that she was able to carry on several of her daily activities outside the home. For instance, Ms. Sciarrone was able to drive her son to school and pick him up on most days

---

[8] Ms. Sciarrone also submitted affidavits and sworn medical records from physicians who conducted and analyzed her MRIs. *See* Cohen Aff., Exs. 9-12.

following the accident, and took family vacations to two amusement parks during that time. Sciarrone Dep. at 72:6-22; 73:20-74:20. With respect to the impact of the crash, Ms. Sciarrone testified that no part of her body (except for her hands on the steering wheel) came into contact with the interior of the car. *Id.* at 27:6-28:5. Ms. Sciarrone did not lose consciousness and suffered no bruises or cuts as a result of the impact. *Id.* at 28:6-8; 77:23-78:6.

In the face of these facts, I cannot conclude that Ms. Sciarrone has raised a genuine issue of fact requiring trial with respect to whether she was prevented from performing substantially all of her normal activities for 90 out of the 180 days immediately following the automobile accident.

3. *Fracture as a Result of the Accident*

Finally, Ms. Sciarrone maintains that the fracture to her ankle qualifies as a serious injury because it occurred as the result of the December 2011 car accident. It is without doubt that a fracture can meet the threshold of serious injury as defined in New York's Insurance Law. N.Y. Ins. Law § 5102(d). However, Ms. Sciarrone suffered this fracture approximately 13 months after the automobile accident took place, when she slipped on the stairs in her own house. Prior to the automobile accident, Ms. Sciarrone had already fallen on the same stairs, and had been diagnosed with disorientation. Downing Aff., Ex. M at 10-11; Ex. P at 14. In the circumstances of this case, it arises to no more than sheer speculation that the accident was the proximate cause of her dizziness, and thus the proximate cause of her fracture. A reasonable jury could not reach that conclusion. *See Waaland v. Weiss*, 643 N.Y.S.2d 635, 636-37 (2d Dept. 1996).

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment is granted. The Clerk is directed to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated:    Brooklyn, New York
          December 2, 2014